UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
99 DEC 16 PM 3:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

JOSHUA DEMPSEY, )
　)
　Plaintiff, )
　)
vs. ) CV 98-BU-3102-E
　)
ADVANTAGE LOGISTICS— )
SOUTHEAST, INC., )
　)
　Defendant. )

ENTERED
DEC 16 1999

## MEMORANDUM OPINION

The above-styled cause is presently before this Court on Motion for Summary Judgment filed by Defendant Advantage Logistics – Southeast, Inc. (Doc. 18) Plaintiff Joshua Dempsey sued his former employer, Advantage Logistics, alleging violation of the Family Medical Leave Act [FMLA] (termination and lack of proper notice), violation of the Consolidated Omnibus Reconciliation Act [COBRA] notice provisions, violation of the Americans with Disabilities Act [ADA], and negligence. (Doc. 11)

For the reasons set forth below, Defendant's Motion for Summary Judgment is due to be granted in part and denied in part. The Court finds a disputed issue of material fact such that Defendant's Motion for Summary Judgment is due to be denied as to Plaintiff's claim that he was terminated in violation of the FMLA. However, as to all other claims, the Court finds no disputed issue of material fact and, consequently, Defendant is entitled to judgment as a matter of law.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties bring to bear in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the court the reasons why the nonmoving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Id.* The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, **by reference to materials on file**, that there are no genuine issues of material fact that should be decided at trial. **Only** when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex*

did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. **Even after *Celotex* it is never enough to simply state that the non-moving party cannot meet its burden at trial**.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54)(emphasis added)[1]

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is

---

[1] The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* rule for [an] uncommon situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607. Obviously, this case does not fall into the "uncommon situation" addressed in *Celotex*. *See* Def. Brief, p. 14.

no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## II.  STATEMENT OF FACTS

Plaintiff Joshua Dempsey began working for Defendant Advanced Logistics on February 1996. Def. Exh. 1. It is disputed as to whether Plaintiff received information regarding the FMLA at his orientation training sessions; however, it is not disputed that Defendant placed a poster detailing employee rights under the FMLA in its break room.

Plaintiff contends that around November or December of 1996, he began having troubled urinating. Allegedly, his physician, Dr. Gehi, told him at that time that the opening to one of his kidneys was smaller than the opening to the other and that this would cause Plaintiff to experience genito-kidney problems. Plaintiff has not submitted any medical evidence to establish Dr. Gehi's diagnosis or his prediction of subsequent chronic problems.

In February, Plaintiff spent five days in the hospital with a peptic ulcer. Plaintiff claims as a result of his ulcer, he was unable to swallow or eat. He was proscribed Prilosec, which alleviated his symptoms.

Without medical evidence to support his testimony, Plaintiff states that he continued to have medical problems associated with his "genito-urinary system." He was absent from work on March 28, 1997, for a kidney stone.

On April 14th, Plaintiff was given a verbal warning for excessive absences. The warning states that Plaintiff had missed 44 hours from December 1, 1996 until March 12, 1997. On May 30th, Plaintiff was given a written warning for excessive absences. This warning states that Plaintiff had missed a total of 51.02 hours. Plaintiff contends that he missed this time because of a serious medical condition. However, other than the absence in February for his ulcer, the record contains no medical evidence that his absences on the dates at issue in the written warnings were due to a serious medical condition, or that Defendant was aware that the absences were due to a serious medical condition.

Plaintiff's recollection alone is not sufficient to establish same.[2] Defendant contends that the warnings were issued for unexcused absences. Plaintiff has failed to show otherwise.

On June 17, 1997, Plaintiff went to the emergency room with abdominal pain. On June 25, his treating physician released him for work without restrictions. Plaintiff contends, without medical evidence, that during this time he "continued to have problems with his testicles swelling, and he continued to have pains in his back and side related to his various medical conditions." Plaintiff's Brief, p. 11. On July 1st, Plaintiff went to the emergency room with "flank pain." One physician, Dr. Snead, released him to return to work on July 3, 1997. Dr. Gehi documented that Plaintiff could return to work on July 8, 1997. Another physician, Dr. Howard Kitchen, released him for work on July 9, 1997.

During this time, Plaintiff received formal notice of his rights under the FMLA. On July 3, 1997, Plaintiff received a document entitled, "Family and Medical Leave notice to employees Requesting a Leave." Def. Exh. 17.

On July 29, 1997, Plaintiff requested and received FMLA leave for surgery and recovery. Plaintiff requested, and was approved for, leave from July 29, 1997 until August 16, 1997. On August 2, 1997, Dr. McVeigh released Plaintiff to return to work on August 5th. On August 4th, Dr. Klein released Plaintiff to return to work August 8th. Defendant had Dr. Klein's release on August 5th when Plaintiff called the personnel office and talked to

---

[2]Plaintiff's Brief states, "All of the leave that he took from work after December 1996, other than holiday vacation, and funeral leave, except for (2) days, was attributable to his various medical conditions." Pl. Brief, p. 18. However, Plaintiff testified that he told by his supervisor "the first day [he] left out of work for a . . . sick day" that he was required to have a doctor's excuse. Pl. Depo., p. 125.

Sherri Norred. Ms. Norred told Plaintiff that he had to have a release from his doctor to come back to work before August 8th, and that he should call his manager, Pam Beabout, to let her know what day he would be back. Plaintiff knew that he was scheduled to work on August 8th.

On August 8th, Plaintiff did not appear for work. Moreover, he did not call Ms. Beabout, as instructed, prior to or on that date. Therefore, Jay Lux, Human Resources Director, and Ms. Beabout issued a final written warning to Plaintiff on August 11th, for his failure to call/show up for work and for failure to follow supervisor's instructions. Plaintiff admits that, at this time, he was told that he would have to talk with his supervisor, Marvin Reese, if he was not coming to work and it would be necessary to obtain permission to leave work from his supervisor.

On August 8th, after the time for his shift to start, Plaintiff obtained a third release, from Dr. Kirby Bryant, which stated that Plaintiff could return to work on August 12, 1997.

Plaintiff returned to work on August 12, 1997. He contends that he was restricted to light lifting. Plaintiff was sent to work on Module 6, which he contends was the hardest and busiest module. However, Defendant has presented evidence that there were no heavy boxes in Module 6. An hour or two into his shift, Plaintiff contends that he began passing blood while urinating. The evidence is largely disputed as to the events that followed.

Plaintiff contends that, based on his meeting the day before with Mr. Lux and Ms. Beabout, he wanted everyone to know he needed to leave. Therefore, Plaintiff claims that he told Mr. Lux he needed to leave. Mr. Lux testified, however, that he told Plaintiff he

could not give him permission to leave and that he needed to ask Mr. Reese. Plaintiff claims he did not ask permission to leave from Mr. Lux; he testified he simply told Mr. Lux that he needed to leave right away.

Plaintiff contends that he purposefully found Mr. Reese and told him he needed to leave. He testified that Mr. Reese simply responded that Plaintiff needed to bring him a doctor's excuse when he returned. Defendant, on the other hand, contends that Plaintiff only spoke to Mr. Reese because Mr. Reese had caught him on Plaintiff's way out the door. Moreover, Defendants have presented evidence that Plaintiff specifically told Mr. Reese that Mr. Lux had given him permission to leave.

According to Defendant, Mr. Reese and Mr. Lux discussed Plaintiff leaving work. Mr. Reese told Mr. Lux that he had caught Plaintiff leaving work and that Plaintiff told him that Mr. Lux had given him permission to leave. Whereupon, Mr. Lux responded that he had not given Plaintiff permission to leave, but, rather, he had told him to ask Mr. Reese for permission.

The following day, Defendant terminated Plaintiff allegedly for dishonesty and for failure to follow a supervisor's directions.

### III. **DISCUSSION**

#### A. ADA CLAIM

In order to establish a prima facie case of discrimination in violation of the ADA, Plaintiff must show: "(1) [he] has a disability, (2) [he] is a qualified individual, and (3) [he] was discriminated against because of the disability." *Pritchard v. Southern Company*

*Services*, 92 F.3d 1130, 1132 (11th Cir. 1996)(citing 42 U.S.C. § 12132).

The Act defines "disability" three ways:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

*Id*. (quoting 42 U.S.C. § 12102(2)). Plaintiff contends that he is "disabled" because (1) he has physical impairments that substantially limit major life activities of swallowing, eating, performing manual tasks, and working. He also contends that he is "disabled" because he has a record of such physical impairments and because he was regarded by Defendant as having such impairment.

    1.    PHYSICAL IMPAIRMENTS SUBSTANTIALLY LIMITED LIFE ACTIVITIES – CONSIDERATION OF MITIGATED STATE

Defendant contends that Plaintiff cannot establish that any major life activities are substantially limited due to physical impairments because his symptoms arising from the impairments are effectively controlled with medication. Def. Brief, pp. 16-17 (citing *Albertsons, Inc. v. Kirkingburg*, ___ U.S. ___, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999); *Sutton v. United Air Lines, Inc.*, ___ U.S. ___, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999); *Murphy v. United Parcel Service*, ___ U.S. ___, 119 S. Ct. 2133, 144 L. Ed. 2d 484 (1999)). Plaintiff contends, however, that he is substantially limited despite medications. Pl. Brief, p. 24. Moreover, Plaintiff contends that his claims are distinguishable from those made in the trilogy of Supreme Court cases cited by Defendant because "none of the Supreme Court cases cited by the defendant concern a case where a disabled individual

must take medication to prevent inability to physically function or to prevent potential death." *Id*. at 24-25. He contends that this Court should view his impairments in their unmitigated state.

Addressing Plaintiff's last contention first, this Court finds that Plaintiff's argument that his physical impairments should be considered in their unmitigated state is foreclosed by the express language of the Supreme Court in *Sutton*. In *Sutton*, the Supreme Court stated:

> With this statutory and regulatory framework in mind, we turn first to the question whether petitioners have stated a claim under subsection (A) of the disability definition, that is, whether they have alleged that they possess a physical impairment that substantially limits them in one or more major life activities. See 42 U.S.C. § 12102(2)(A). Because petitioners allege that with corrective measures their vision "is 20/20 or better," see App. 23, they are not actually disabled within the meaning of the Act if the "disability" determination is made with reference to these measures. Consequently, with respect to subsection (A) of the disability definition, ***our decision turns on whether disability is to be determined with or without reference to corrective measures.***
>
> We conclude that . . . the approach adopted by the agency guidelines – that persons are to be evaluated in their hypothetical uncorrected state – is an impermissible interpretation of the ADA. Looking at the Act as a whole, ***it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures--both positive and negative--must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the Act.*** . . .
>
> Three separate provisions of the ADA, read in concert, lead us to this conclusion. The Act defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. § 12102(2)(A) (emphasis added). Because the phrase "substantially limits" appears in the Act in the present indicative verb form, ***we think the language is properly read as requiring that a person be presently--not potentially or hypothetically--substantially limited in order to demonstrate a disability***. A "disability" exists only where an

impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, *a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.*

The definition of disability also requires that disabilities be evaluated "with respect to an individual" and be determined based on whether an impairment substantially limits the "major life activities of such individual." § 12102(2). Thus, whether a person has a disability under the ADA is an individualized inquiry. See *Bragdon v. Abbott*, 524 U.S. 624, ----, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (declining to consider whether HIV infection is a per se disability under the ADA); 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual").

*The agency guidelines' directive that persons be judged in their uncorrected or unmitigated state runs directly counter to the individualized inquiry mandated by the ADA.* The agency approach would often require courts and employers to speculate about a person's condition and would, in many cases, force them to make a disability determination based on general information about how an uncorrected impairment usually affects individuals, rather than on the individual's actual condition. For instance, under this view, courts would almost certainly find all diabetics to be disabled, because if they failed to monitor their blood sugar levels and administer insulin, they would almost certainly be substantially limited in one or more major life activities. *A diabetic whose illness does not impair his or her daily activities would therefore be considered disabled simply because he or she has diabetes.*[3] Thus, the guidelines approach would create a system in which persons often must be treated as members of a group of people with similar impairments, rather than as individuals. *This is contrary to both the letter and the spirit of the ADA.*

---

[3]In support of his argument, Plaintiff quotes from the decision, *Gonzales v. City of New Braunfels*, 176 F.3d 834, 836-37 (5th Cir. 1999), which states, "[C]ourts should consider a serious impairment, *such as diabetes*, in its unmitigated state." Clearly, this holding of the Fifth Circuit Court of Appeals was overruled by the *Sutton* decision.

*Sutton*, 119 S.Ct. at 2145 -47 (emphasis added)(footnote added)

Therefore, in deciding whether Plaintiff is disabled – that is whether his physical impairments substantially limit one or more major life activities – this Court will look to evidence of Plaintiff's present, mitigated condition.

Plaintiff contends that his physical impairments substantially limit his ability to swallow, eat, and work.

          a.    Swallowing and Eating

Plaintiff testified that the prescribed medications for his ulcer alleviated difficulties in swallowing and eating. Plaintiff's Amended Complaint states, "The plaintiff had a disability in that he has medical problems with his genito-urinary tract, specifically his kidneys and prostate," and "The plaintiff continues to have kidney and prostate problems to this date." (Doc. 11, ¶¶ 47-48). The Amended Complaint contains no claim that Plaintiff was disabled due to the physical impairment of a peptic ulcer.

Therefore, to the extent Plaintiff attempts to raise such a claim at this juncture, Defendant's Motion for Summary Judgment is due to be granted.

          b.    Performing Manual Tasks/Working

Plaintiff contends that "he has swelling and stabbing pains in his testicles and prostate [that] prevent him from performing manual tasks." Pl. Brief, p. 22 (citing Pl. Depo., pp. 31-35, 59). In support of Plaintiff's claim that he is limited in his ability to perform manual tasks, Plaintiff's cites to his deposition testimony to the effect that his impairments, at times, caused him to miss work, slowed his job performance, and limited his ability to lift. Pl. Depo., p. 59. Plaintiff contends that "he is impaired from working in any range of

jobs performing manual tasks unless an employer provides him with the accommodations of time off[4] and light duty work when his . . . genito-urinary problems flair up." Pl. Brief, p. 27.

Plaintiff testified that his symptoms related to his genito-urinary problems are ameliorated, usually, with Biaxin. When the Biaxin does not relieve the pain, he would see a doctor. From August 1998 until July 1999, Plaintiff sought medical treatment twice.

The Court finds that, as mitigated by medication, Plaintiff's genito-urinary problems do not substantially limit Plaintiff's alleged major life activity of working.[5] Therefore, Plaintiff cannot establish that he is disabled due to physical impairments that substantially limit major life activities. Defendant's Motion for Summary Judgment is due to be granted as to Plaintiff's claim that Defendant discriminated against him on the basis of his disability.

### 2. RECORD OF SUCH IMPAIRMENT

Plaintiff contends that he had "record of a disability" because "the defendant indicated on its leave forms that the plaintiff was taking disability leave," and because "the plaintiff applied for and was granted short term disability benefits based on paperwork which he and the defendant filled out with respect to his medical condition." Pl. Brief, p.

---

[4]The Eleventh Circuit Court of Appeals, deciding a claim brought under the Rehabilitation Act, held that an employee was not a "qualified individual" and that his employer was not required to accommodate the employee's sporadic, unpredictable absences. *Jackson v. Veterans Administration*, 22 F.3d 277, 279-80 (11th Cir. 1994).

[5]This Court notes that it has held that "working" is not a major life activity. *See Mullins v. Crowell*, CV 97-BU-1897-S, Memorandum Opinion (Doc. 139), pp. 125-33 (holding "working" is not a major life activity).

27 (citing Pl. Exh. 8).

The Amended Complaint contains no claim that Plaintiff was disabled due to having a record of a disability. Therefore, to the extent Plaintiff attempts to raise such a claim at this juncture, Defendant's Motion for Summary Judgment is due to be granted.

### 3. REGARDED AS DISABLED.

Plaintiff contends that the following facts support his claim that he was regarded as having an impairment that substantially limits a major life activity: (1) his supervisor and other management employees "constantly" inquired about Plaintiff's ailments; (2) his supervisor told him that he understood all of Plaintiff's ailments were related to the same problem, (3) employer signed and checked leave form for "disability" leave, (4) Defendant granted Plaintiff accommodations for light work, when requested, and (5) he was told he was terminated for too many absences.[6] The Court finds that these facts, even if taken as true, do not demonstrate that Defendant regarded Plaintiff as disabled as defined by the ADA. *Sutton v. Lader*, 185 F.3d 1203, 1208-09 (11th Cir. 1999).

Plaintiff has failed to show that Defendant regarded him as having a physical impairment that substantially limits a major life function. Therefore, Defendant's Motion for Summary Judgment is due to be granted as to Plaintiff's claim that Defendant discriminated against him on the basis of a perceived disability.

---

[6]Defendant disputes that this is a reason for Plaintiff's termination.

## B. FMLA CLAIM

### 1. NOTICE

Plaintiff claims Defendant did not inform him that he could take FMLA leave until July 1997. He claims that he was eligible for such leave in November or December 1996. Plaintiff contends that he did not receive formal notification of his rights under the FMLA until July 1997, when he signed a formal notification of his rights. However, Defendant contends that Plaintiff was informed of his rights in the ordinary course of business during his orientation training and that a poster detailing his rights under the FMLA was posted in Defendant's break room. Plaintiff states that he does not recall receiving notification of FMLA rights at his orientation. Also, he testified that he saw the poster in the break room, but never read it. Plaintiff has failed to present substantial evidence that Defendant failed to notify him of his rights under the FMLA.

Moreover, prior to July 1998 the only adverse actions alleged by Plaintiff to have resulted from his lack of notice are two reprimands for excessive absenteeism. The evidence does not support Plaintiff's claim that his absences were for reasons protected by the FMLA. Indeed, there is no evidence that Plaintiff suffered any harm from failure to receive notice of his rights under the Act. *Graham v. State Farm Mutual Insurance Co.*, 193 F.3d 1274, Appendix A at 1283-84 (11th Cir.1999).

Therefore, this Court holds that Plaintiff cannot establish a claim for violation of the FMLA notice provision prior to July 1997. Defendant's Motion for Summary Judgment is due to be granted as to such claim.

### 2.     DISCRIMINATION

Plaintiff claims Defendant interfered with his right to FMLA leave or discrimination against him on the basis of his using FMLA leave when it reprimanded Plaintiff following July 1997 leave and it terminated him for taking leave covered by FMLA in August 1997.

#### a.     Final Warning Reprimand

Plaintiff contends that Defendant interfered with his FMLA leave by disciplining him while he was out on covered leave.  However, Plaintiff's Amended Complaint does not contain a claim for interference with leave related to his August 11th final warning. Therefore, to the extent Plaintiff attempts to raise such a claim at this juncture, Defendant's Motion for Summary Judgment is due to be granted.

#### b.     Termination

Plaintiff contends that Defendants terminated him in violation of the FMLA.  The Court finds that there is a disputed issue of fact as to whether Defendant terminated Plaintiff for taking FMLA leave.

Defendant contends that it terminated Plaintiff for dishonesty and for failure to follow instructions.  Specifically, Defendant contends that it terminated Plaintiff because he told his supervisor that the Human Resources director had given him permission to leave and because he did not request permission to leave from his supervisor.  Plaintiff, however, testified that he went to his supervisor and told him that he needed to leave for medical reasons.  This dispute in the events surrounding Plaintiff's termination creates a disputed issue of material fact that turns on the assessment of the credibility of Plaintiff, Mr. Lux, and Mr. Reese regarding the events of August 12, 1999 preceding Plaintiff's termination.

Therefore, Defendant's Motion for Summary Judgment is due to be denied as to Plaintiff's claim of discriminatory termination for taking leave under the FMLA.

### 3. ABSENTEEISM POLICY CONFLICTS WITH FMLA

Plaintiff, in his brief, attempts to raise a claim based on the fact that Defendant's absenteeism policy violates the FMLA. However, this claim is not in Plaintiff's Amended Complaint. Therefore, to the extent Plaintiff attempts to raise such a claim at this juncture, Defendant's Motion for Summary Judgment is due to be granted.

### C. NEGLIGENCE PER SE CLAIM

Defendant contends that it is entitled to judgment as a matter of law as to Plaintiff's negligence per se claim, based upon the FMLA, alleging Plaintiff was wrongfully terminated. The Court notes that Alabama Courts strongly adhere to the employment-at-will doctrine and have refused to create public policy exceptions to the doctrine in cases where an employee contends he was wrongfully terminated. Indeed, the Alabama Supreme Court has specifically refused to create a public policy exception to the at-will doctrine based on gender discrimination. *Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 312-313 (Ala. 1992). Therefore, this Court holds that Alabama law does not recognize a claim for wrongful termination due to violations of the FMLA.

Defendant's Motion for Summary Judgment as to Plaintiff's negligence claim is due to be granted.

### D. COBRA CLAIM

Defendant contends that it is entitled to judgment as a matter of law as to Plaintiff's COBRA claim. Plaintiff, however, states that he "will not pursue claims under COBRA." Pl. Amended Brief, p. 8. Therefore, Defendant's Motion for Summary Judgment is due to be granted as to Plaintiff's COBRA claim.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is due to be granted in part and denied in part. The Court finds a disputed issue of material fact such that Defendant's Motion for Summary Judgment is due to be denied as to Plaintiff's claim that he was terminated in violation of the FMLA. However, as to all other claims, the Court finds no disputed issue of material fact and Defendant is entitled to judgment as a matter of law.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion.

DONE this 17th day of December, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE